**Hoagland, Longo, Moran, Dunst & Doukas, LLP**
By: Sean C. Ryan, Esquire – Pennsylvania Attorney ID No. 209991
7 Great Valley Parkway, Suite 290
Malvern, PA 19355
Telephone: 215-297-2995
Fax:       732-545-4579
Email:     sryan@hoaglandlongo.com          Attorneys for Plaintiff RCD Group, Inc.

| | | |
|---|---|---|
| RCD GROUP, INC.<br>3477 Corporate Parkway, Suite 100<br>Center Valley, PA 18034,  Plaintiff, | : <br> : <br> : <br> : | IN THE UNITED STATES DISTRICT<br>COURT FOR THE EASTERN DISTRICT<br>OF PENNSYLVANIA |
| vs. | : <br> : | No. |
| JRC RENOVATIONS, LLC<br>104 Knollwood Drive<br>Old Saybrook, CT  06475, | : <br> : <br> : <br> : | JURY TRIAL DEMANDED |
| BIG CONTRACTING CORP.<br>a/k/a BIG ABATEMENT<br>307 South 27th Street<br>Union City, NJ  07087, | : <br> : <br> : <br> : <br> : | |
| JRC RENOVATIONS, INC.<br>5913 Grand Avenue<br>Maspeth, NY  11378, | : <br> : <br> : <br> : | |
| JRC RESTORATIONS<br>15447 13th Ave.<br>Whitestone, NY 11357 | : <br> : <br> : <br> : | |
| DIMITRIOS KASSIMIS<br>104 Knollwood Drive<br>Old Saybrook, CT  06475, | : <br> : <br> : <br> : | |
| and | : <br> : | |
| ERICK BENAVIDES<br>307 South 27th Street<br>Union City, NJ  07087,<br>Defendants. | : <br> : <br> : <br> : | |

## **COMPLAINT**

Plaintiff, the RCD Group, Inc. ("Plaintiff"), by and through its counsel Hoagland, Longo,

Moran, Dunst & Doukas, LLP, brings this action against Defendants, JRC Renovations, LLC, Big Contracting Corp., JRC Renovations, Inc., JRC Restorations, Dimitrios Kassimis and Erick Benavides (collectively, "Defendants") alleging the following:

## NATURE OF THE PROCEEDING

1.      This is an action for Breach of Contract, Unjust Enrichment, Fraud, Indemnity, Alter Ego Liability and Piercing the Corporate Veil to recover damages from Defendants for financial damages suffered by the RCD Group, Inc. arising from the actions and inactions of Defendants and in connection with a fraudulent scheme orchestrated by Defendants.

## THE PARTIES

2.      Plaintiff, the RCD Group, Inc. ("Plaintiff") is a Pennsylvania corporation with its principal place of business located at 3477 Corporate Parkway, Suite 100, Center Valley, Pennsylvania 18034.

3.      Defendant JRC Renovations, LLC ("Defendant JRC Renovations, LLC") is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business located at 104 Knollwood Drive in Old Saybrook, Connecticut 06475.

4.      Defendant BIG Contracting Corp. a/k/a BIG Abatement (collectively "Defendant BIG") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 307 South 27th Street in Union City, New Jersey 07087.

5.      Defendant JRC Renovations, Inc. ("Defendant JRC Renovations, Inc.") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 5913 Grand Avenue in Maspeth, New York 11378.

6.      Defendant JRC Restorations ("Defendant JRC Restorations") is a corporation

organized and existing under the laws of the State of New York with its principal place of business located at 15447 13th Avenue in Whitestone, New York 11357.

7.     Defendant Dimitrios Kassimis ("Defendant Kassimis") is an adult individual who resides within the State of New Jersey at 307 South 27th Street in Union City, New Jersey 07087, and is an Owner of Defendant BIG Contracting Corp. and the Principal of Defendant JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations.

8.     Defendant Erick Benavides ("Defendant Benavides") is an adult individual who resides within the State of New Jersey at 307 South 27th Street in Union City, New Jersey 07087, and is an Owner of Defendant BIG Contracting Corp. and the Principal of Defendant JRC Renovations, LLC, JRC Renovations, Inc and JRC Restorations.

## JURISDICTION AND VENUE

9.     Jurisdiction is predicated upon 28 U.S.C.A. § 1332, there being complete diversity between all plaintiffs and defendants, and the matter in controversy, exclusive of interest and costs, is in excess of $75,000.

10.     Venue in this District is proper pursuant to 28 U.S.C.A. § 1391(a) as the contract was entered into, and the events that form the basis for the causes of action asserted in this Complaint, occurred within this District in Northampton County, Pennsylvania.

## BACKGROUND FACTS

11.     On or around December 1, 2016, Plaintiff entered into a written contract (the "Prime Contract") with G-P SWB LR, Inc., 8th & Eaton Holdings, LP, HMLP-MT, LP, and RMLP-MT, LP (collectively, the "Owners") to demolish the Martin Tower located at 1170 8th Avenue in Bethlehem, Pennsylvania (the "Project").  A true and correct copy of the Prime Contract is attached as Exhibit "A."

12.     The Martin Tower is the former world headquarters for Bethlehem Steel, and is the tallest building in the Lehigh Valley.

13.     Part of the demolition of the Martin Tower involved the removal of asbestos that was used as an insulator and fire retardant when the building was constructed 45 years ago.

## THE SUBCONTRACT AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT BIG

14.     On or around March 28, 2017, RCD entered into a written subcontract (the "Subcontract Agreement") with Defendant BIG wherein Defendant BIG agreed to perform asbestos abatement services for a sum of $3,800,000 and interior demolition services for a sum of $1,707,000.  A true and correct copy of the Subcontract Agreement is attached as Exhibit "B."

15.     Defendants Kassimis and Benavides signed the Subcontract Agreement on behalf of Defendant BIG.  Exh. B.

16.     The Subcontract Agreement required Defendant BIG to timely and satisfactorily complete the scope of work agreed to between the parties and explicitly set forth in the Agreement.  Exh. B,  at §§ 3.2 & 5.2.

17.     Furthermore, the Subcontract Agreement required Defendant BIG to provide and pay for all labor, materials, tools, supplies and equipment necessary to complete the work.  Exh. B, at §§ 3.3 & 14.1.

18.     The Subcontract Agreement contains a Termination Provision at Article 16.1 that explicitly sets forth:

> In the event of any such termination of Subcontractor (Defendant BIG), Subcontractor shall remain responsible for all costs associated with such termination, and shall not be entitled to receive any payment under the Subcontract which might otherwise be due, until the Work shall be completed and payment in full therefore shall be made by Customer to Contractor (Plaintiff) at which time, if the unpaid balance of the Subcontract Sum shall exceed the expenses incurred by Contractor in finishing the Work, and any costs or damages,

> including reasonable attorney's fees, incurred or sustained by Contractor by reason of such failure or lack of performance by Subcontractor, such excess shall be paid by Contractor to Subcontractor up to the amount due hereunder to Subcontractor through the date of such termination, but if such expenses shall exceed such unpaid balance, Subcontractor shall promptly pay the difference to Contractor.

Exh. B, at § 16.1.

19.     Furthermore, the Subcontract Agreement requires that Defendant BIG is responsible for the cost of Plaintiff to "perform the Work itself or hire any other subcontractor or subcontractors to finish the Work and provide the labor, services, materials or equipment necessary to perform the Work . . ." Exh. B, at § 16.1.

20.     Under the Subcontract Agreement, Defendant BIG is obligated under Article 10.1 of the Subcontract to "indemnify, defend, and hold harmless" Plaintiff "from and against any and all claims, demands, complaints, suits, causes of action, damages, liabilities, losses, costs, fines, liens, including mechanics' liens, penalties and expenses . . . arising out of or resulting from (a) the performance of the Work; (b) the acts or omissions of Subcontractor (Defendant BIG) . . . (c) the failure to pay any Subcontractor Parties for any portion of the Work; (d) a violation of any applicable Legal Requirements by Subcontractor or any Subcontractor Parties; or (e) any breach or default by Subcontractor of Subcontractor's duties and obligations under the Subcontract." Exh. B, at § 10.1.

21.     Article 13.1 of the Subcontract Agreement requires that Defendant BIG "shall not allow, with respect to itself and anyone performing or providing any portion of the Work, any (a) mechanic's or materialmen's liens to be filed against the Project or Project Site, or (b) stop notices to be delivered to Customer (Owner), any vendor or other third party." If Defendant BIG fails to satisfy its obligations under this provision, Defendant BIG is required to "reimburse Customer (Owners) and Contractor (Plaintiff) for all moneys that each of them may pay in

procuring the discharge thereof, including costs and reasonable attorney's fees." Exh. B at §13.1.

22.     In the event of any delay to Project completion, Section 3(c) of the Prime Agreement contains a Liquidated Damages clause of $1,000 per day of delay. Exh. A, page 3, at §3(c).

23.     In conjunction, Article 5.2 of the Subcontract requires Defendant BIG to "indemnify, defend, and hold Contractor (Plaintiff) harmless" from any late charges, penalties or damages resulting from Defendant BIG's failure to complete the Work in accordance with the Work Schedule. Exh. B, at §5.2.

## DEFENDANT BIG FAILS TO SATISFY ITS CONTRACTUAL OBLIGATIONS TO PLAINTIFF

24.     At all times, BIG held itself out to be an appropriately experienced asbestos abatement contractor capable of completing its scope of work competently, in accordance with the requirements of the Subcontract Agreement and in a timely manner.

25.     In the Subcontract Agreement, BIG was required to supply adequate and competent supervision, a sufficient number of properly skilled workmen, materials of the proper quality and quantity and prosecute the work with promptness and diligence.

26.     BIG's performance on the Project was an issue from the very beginning, in that it consistently failed to furnish sufficient skilled workmen or the necessary equipment and materials to make timely progress with its scope of work on the Project.

27.     BIG's multiple failures to advance the work jeopardized the timely completion of the Project, and exposed RCD to liquidated and other damages under the Prime Agreement.

28.     On August 14, 2017, Plaintiff sent a formal Notice of Default to Defendant BIG documenting  BIG's failures to comply with the Subcontract Agreement, and demanding that

BIG prepare a schedule and demonstrate that it has the ability to timely complete its scope of work.  The letter also demanded that BIG attend a meeting with the Project team the following day..  A true and correct copy of this Notice of Default Letter is attached as Exhibit "C."

29.    Defendant BIG did not formally respond to the Notice of Termination or appear at the scheduled meetings sought by Plaintiff.  However, Defendant BIG did continue to promise that Defendant BIG would satisfy its contractual obligations to Plaintiff on the Project.

30.    On October 5, 2017, Plaintiff sent a formal notice terminating Defendant BIG from the Project pursuant to Article 16 of the Subcontract Agreement as a result of Defendant BIG's:   failure to perform its contractual obligations to Plaintiff's reasonable satisfaction and in strict conformity to the contract documents; failure to prosecute the work promptly and diligently; and, failure to supply services and labor of the quality required by the Subcontract.  A true and correct copy of this email correspondence with attached Letter is attached as Exhibit "D."

31.    Through an email sent to Plaintiff, Defendant Kassimis acknowledged receipt of the Notice of Termination on October 4, 2017.  A true and correct copy of Defendant Kassimis' Email is attached as Exhibit "E."

32.    After Defendant BIG was terminated for cause from the Project, it became evident that Defendant BIG through Defendants Kassimis, Benavides, JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations had engaged in a scheme to fraudulently seek payment for (1) work that it had not completed and (2) materials and labor for which it had not paid.

33.    On January 18, 2018, Plaintiff sent a letter notifying Defendants BIG and Kassimis of its belief as to the fraudulent conduct and the damages suffered by Plaintiff and

offering Defendants BIG and Kissimis one last opportunity to resolve this matter without resorting to litigation.  A true and correct copy of this Letter is attached as Exhibit "F."

34.     Defendants BIG and Kassimis neglected to provide any answer to this letter or act to satisfy any its debts or remedy any of the damages arising from their breaches of the Subcontract Agreement.

## COUNT I
## BREACH OF CONTRACT
## PLAINTIFF v. ALL DEFENDANTS

35.     The aforementioned paragraphs are incorporated as if set forth more fully herein.

36.     The Subcontract Agreement entered into between Plaintiff and Defendant BIG explicitly set forth Defendant BIG's contractual obligations to Plaintiff on the Project.  See Exh. B.

37.     Defendant BIG failed to timely and satisfactorily complete its required scope of work on the Project.

38.     Due to Defendant BIG's failure to satisfy its contractual obligations to Plaintiff in timely and satisfactorily performing its required scope of work, Plaintiff properly terminated Defendant BIG from the Project for cause pursuant to Article 16 of the Subcontract Agreement. See Exh. B, Art. 16 and Exh C.

39.     Defendant BIG's failure to timely and satisfactorily complete its obligatory scope of work has caused Plaintiff harm by delaying the Project and requiring that Plaintiff perform the work itself and/or hire additional subcontractors to accelerate and finish the work in an effort to mitigate the delays caused by Defendant BIG.

40.     Consequently, Plaintiff has been severely harmed due to Defendant BIG's breach of the Subcontract Agreement.

41.     Pursuant to the Termination Provision located at Article 16 of the Subcontract Agreement, Defendant BIG is responsible for all costs associated with its termination and for the cost of Defendants to "perform the Work itself or hire any other subcontractor or subcontractors to finish the Work and provide the labor, services, materials or equipment necessary to perform the Work . . ." Exh. B at § 16.

42.     As a direct result of Defendant BIG's breach of the Subcontract Agreement, Plaintiff has suffered damages in excess of $300,000 and continues to accrue damages caused by the delays resulting from Defendant BIG's failure to satisfy its contractual obligations.

**WHEREFORE,** Plaintiff demands judgment against the Defendant, jointly and severally, for breach of contract and further demands attorney's fees, interest, the costs associated with bringing this action and any such other relief as this Honorable Court deems just and proper.

<u>**COUNT II**</u>
**BREACH OF CONTRACT**
**PLAINTIFF v. ALL DEFENDANTS**

43.     The aforementioned paragraphs are incorporated as if set forth more fully herein.

44.     The Subcontract Agreement required Defendant BIG to provide and pay for all labor, materials, tools, supplies and equipment necessary to complete the work.  Exh. B at § 3.3.

45.     Article 13.2 of the Subcontract Agreement empowers Plaintiff with "the right to require proof of payment by the Subcontractor (Defendant BIG) of bills for labor, services, material, and all other things furnished or done for the performance of the Work." Exh. B. at § 13.2.

46.     In a letter dated October 5, 2017, Plaintiff demanded that Defendant BIG "provide evidence that the labor and materials accounts incurred by BIG in connection with the Work

have been satisfactorily paid by BIG." Exh. D.

47.     Despite acknowledging receipt of the October 5, 2017 letter, Defendant BIG
failed to provide any such evidence or provide any response.  Exh. E.

48.     Defendant BIG's failure to provide proof of payment or respond in any manner
constitutes a breach of Article 13.2 of the Subcontract Agreement.  Exh. B at § 13.2.

49.     Plaintiff has since learned that Defendants BIG, JRC Renovations LLC, JRC
Renovations, Inc., JRC Restorations, Dimitrios Kassimis and Erik Benavides have failed to pay
for the labor, materials, tools, supplies and equipment necessary to complete the work as
required by Article 3.3 of the Subcontract Agreement.

50.     The failure of Defendants to pay for pay for the labor, materials, tools, supplies
and equipment necessary to complete the work constitutes a breach of Article 3.3 of the
Subcontract Agreement.  Exh. B at § 3.3.

51.     Although Plaintiff's investigation of Defendant BIG's failure to pay its debts is
ongoing, Plaintiff has suffered financial and reputational harm from the following:

    a.  Defendant BIG, through BIG Abatement, entered into an agreement with IESI
Pennsylvania Bethlehem Landfill for disposal services required of Defendant
BIG under the Subcontract Agreement, and incurred costs totaling
$12,311.20.  A true and correct copy of the Invoice is attached as Exhibit "G."

    b.  As a consequence of Defendant BIG's failure to pay for its obligation to IESI
Pennsylvania Bethlehem Landfill, Plaintiff was required to satisfy Defendant
BIG's obligations in the amount of $12,311.20.  A true and correct copy of the
Check Paid by Plaintiff is attached as Exhibit "H."

    c.  Due to Defendant BIG's failure to satisfy its obligations to East Coast Hoist

for hoist equipment necessary to complete its scope of work, Plaintiff was required to assume Defendant BIG's contractual obligations to East Coast Hoist amounting to $97,202.  A true and correct copy of the Equipment Lease Proposal with attached Invoice is attached as Exhibit "I."

d.  To date, Plaintiff has paid $48,230 to East Coast Hoist to satisfy Defendant BIG's contractual obligations, and is responsible for the remaining balance of $48,972 owed by Defendant BIG to East Coast Hoist.  A true and correct copy of the Check Paid by Plaintiff is attached as Exhibit "J."

e.   Defendant BIG through Defendant JRC Restorations entered into an agreement with Superior Scaffold Services, Inc. ("Superior Scaffold") for the rental of scaffolding equipment, services and labor required for Defendant BIG to complete its obligations under the Subcontract Agreement.  A true and correct copy of the Invoices from Superior Scaffold to JRC Restorations is attached as Exhibit "K."

f.  Due to Defendant Big and Defendant JRC Restorations' failures to pay any of the amounts owed to Superior Scaffold, Superior Scaffold has filed a Notice of Intent to File a Mechanics Lien against the Owners' property on or after March 26, 2018, in the amount of $96,686.81 plus interest and attorneys' fees.  A true and correct copy of the Notice is attached as Exhibit "L."

g.  Under Section 6(b) of the Prime Agreement, Plaintiff is required "to pay for all materials furnished and work and labor performed under this Agreement, and to satisfy Owner thereupon whenever demand is made, and to indemnify Indemnitees (Owners) from all liens resulting from Contractor's (Plaintiff's),

or anyone acting on behalf of or under Contractor (Plaintiff), performance under this Agreement against the building(s) for facilities to be constructed, or the premises upon which the Contract Work is to be performed." Exh. A., at § 6(b).

h.  As a consequence of Defendant BIG's breach of its contractual obligations under the Subcontract Agreement to pay for the amounts owed Superior Scaffold, Plaintiff has suffered damages in the form of attorneys' fees, costs and will suffer additional damages related to the contractually required satisfaction by Plaintiff of Defendant BIG's debts owed Superior Scaffold.

52.     Defendants BIG and JRC Restorations' failure to satisfy its contractual obligations to IESI Bethlehem Landfill, East Coast Hoist and Superior Scaffold have caused Plaintiff to suffer serious and continuing reputational and economic harms by being required to satisfy Defendant BIG and Defendant JRC Restorations' obligations related to materials, tools, supplies and equipment.

**WHEREFORE,** Plaintiff demands judgment against the Defendant, jointly and severally, for breach of contract and further demands attorney's fees, interest, the costs associated with bringing this action and any such other relief as this Honorable Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT
## PLAINTIFF v. ALL DEFENDANTS

53.     The aforementioned paragraphs are incorporated as if set forth more fully herein.

54.     Defendant BIG received benefits from payment for work that was not completed and materials and services that were not paid for, but that were required of Defendant BIG by the

Subcontract Agreement.

55.     Defendant BIG had knowledge of these payments and appreciated the fact that they received benefits from these payments.

56.     Defendant BIG voluntarily accepted the payments, but did not pay its suppliers and materialmen.

57.     Defendant BIG inappropriately, and without justification retained the funds.

58.     Under the circumstances of this case it would be inequitable, and in violation of good conscience and fundamental principles of justice and equity, for Defendant BIG to retain those payments.

59.     Defendant BIG should be required to pay Plaintiff for the value of all benefits received for which it did not earn.

**WHEREFORE,** Plaintiff demands judgment against the Defendant, jointly and severally, for unjust enrichment and further demands attorney's fees, interest, the costs associated with bringing this action and any such other relief as this Honorable Court deems just and proper.

### <u>COUNT IV</u>
**FRAUD**
**PLAINTIFF v. ALL DEFENDANTS**

60.     The aforementioned paragraphs are incorporated as if set forth more fully herein.

61.     Defendant BIG falsely represented to the Owners and Plaintiff that Defendant BIG had completed certain work, phases and tasks on the project and paid for materials, equipment and services by submitting payment requests which contained false, misleading and untrue statements or which otherwise omitted material facts.

62.     Between June and August of 2017, Defendant BIG submitted four Applications

and Certifications for Payment seeking a total of $639,900 wherein Defendant BIG and Defendant Kassimis certified and represented to Plaintiff that Defendant BIG had accomplished the levels of completion as to the specific scopes of work required by Defendant BIG on the project as set forth therein.  A true and correct copy of the four Applications and Certifications for Payment are attached as Exhibit "M."

63.     Due to the certifications and representations set forth by Defendants BIG and Kassimis in the four Applications and Certifications for Payment and the checks to Superior Scaffold, Plaintiff paid Defendant BIG checks totaling $532,800.  A true and correct copy of the Checks Paid to Defendant BIG is attached as Exhibit "N."

64.     After Defendant BIG's termination from the project, it became known that Defendant BIG had not actually completed the work set forth in the Applications and Certifications for Payment, but rather, that these documents were false material factual misrepresentations by Defendant BIG.  Exh. "L."

65.     Defendant BIG made these false material representations with knowledge and belief of their falsity.

66.     Defendant BIG made these false material representations with the intention that Plaintiff would rely upon thereon.

67.     Defendant BIG's false material representations resulted in justifiable reliance by Plaintiff to its detriment.

68.     Defendant BIG's false material representations caused Plaintiff to suffer economic damages in excess of $100,000.

**WHEREFORE,** Plaintiff demands that judgment be entered in its favor against the Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit,

interest, and any such other relief as this Honorable Court deems just and proper.

## COUNT V
### FRAUD
### PLAINTIFF v. ALL DEFENDANTS

69.     The aforementioned paragraphs are incorporated as if set forth more fully herein.

70.     On or around March 29, 2017, Defendant BIG submitted a copy of a check to Plaintiff representing that it had, through Defendant JRC Renovations, LLC, paid Superior Scaffold a total of $26,622 for services and equipment necessary for the project, and seeking payment from Plaintiff in that amount.  A true and correct copy of the Check is attached as Exhibit "O."

71.     On or around April 5, 2017, Defendant BIG submitted a copy of a check to Plaintiff representing that it had, through Defendant JRC Renovations, LLC, paid Superior Scaffold a total of $74,000 for services and equipment necessary for the project, and seeking payment from Plaintiff in that amount.  A true and correct copy of the Check is attached as Exhibit "P."

72.     The checks were signed by Defendant Kassimis.  _See_ Exhs. O & P.

73.     Due to the submission of the checks totaling $100,622 to Plaintiff by Defendant BIG, Plaintiff paid Defendant BIG in satisfaction of this amount.  Exh. "N."

74.     It has become known that Defendants BIG, JRC Renovations, LLC and Kassimis had not actually submitted either check to Superior Scaffold for payment, nor had any of Defendants paid any of the amount owed to Superior Scaffolding, but rather, that these documents were false and fraudulent representations by Defendants BIG, JRC Renovations, LLC and Kassimis.

75.     Defendants BIG, JRC Renovations, LLC and Kassimis made these false material

representations with knowledge and belief of their falsity.

76.    Defendants BIG, JRC Renovations, LLC and Kassimis made these false material representations with the intention that Plaintiff would rely upon thereon.

77.    Defendants BIG, JRC Renovations, LLC and Kassimis' false material representations resulted in justifiable reliance by Plaintiff to its detriment.

78.    Defendants BIG, JRC Renovations, LLC and Kassimis' false material representations caused Plaintiff to suffer economic damages in the amount of $100,622 plus additional damages resulting from Superior Scaffold's lien claim and costs and attorneys' fees.

**WHEREFORE,** Plaintiff demands that judgment be entered in its favor against the Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, interest, and any such other relief as this Honorable Court deems just and proper.

### COUNT VI
### CONTRACTUAL INDEMNITY
### PLAINTIFF v. ALL DEFENDANTS

79.    The aforementioned paragraphs are incorporated as if set forth more fully herein.

80.    The Prime Contract requires Plaintiff to indemnify and hold harmless the Owners from and against any and all costs, expenses (including attorneys' fees), damage and liability arising from or relating to the filing of any lien or attempt or threat to file any lien.  Exh. A at §§ 6 & 13.

81.    The Subcontract Agreement requires that Defendants "indemnify, defend, and hold harmless" Plaintiff "from and against any and all claims, demands, complaints, suits, causes of action, damages, liabilities, losses, costs, fines, liens, including mechanics' liens, penalties and expenses . . . arising out of or resulting from (a) the performance of the Work; (b) the acts or omissions of Subcontractor (Defendants) . . . (c) the failure to pay any Subcontractor Parties for

any portion of the Work; (d) a violation of any applicable Legal Requirements by Subcontractor or any Subcontractor Parties; or (e) any breach or default by Subcontractor of Subcontractor's duties and obligations under the Subcontract." Exh. B at § 10.1.

82.     Article 13.1 of the Subcontract Agreement requires that Defendants "shall not allow, with respect to itself and anyone performing or providing any portion of the Work, any (a) mechanic's or materialmen's liens to be filed against the Project or Project Site, or (b) stop notices to be delivered to Customer (Owner), any vendor or other third party." If Defendants fail to satiate its obligations under this provision, Defendants are required to "reimburse Customer (Owners) and Contractor (Plaintiff) for all moneys that each of them may pay in procuring the discharge thereof, including costs and reasonable attorney's fees." Exh. B at § 13.1.

83.     On February 21, 2018, Superior Scaffold sent a Formal Notice of Intent to File a Mechanic's Lien on or after March 26, 2018, against the Property due to JRC Restorations, Inc.'s failure to pay in the amount of $96,686.81 for equipment, materials and labor purchased by JRC Restorations, Inc. for use by Defendant BIG on the Project. Exh. "L."

84.     Plaintiff has been harmed, and will continue to be harmed, by Defendant JRC Restorations, Inc.'s failure to pay Superior Scaffold.

85.     Plaintiff has been further harmed by Defendant BIG's failure to ensure that its contractual obligations were satisfied including the requirement to pay for all labor, materials, tools, supplies and equipment and to indemnify and defend Plaintiff and Owners against any lien claim.

**WHEREFORE,** Plaintiff demands that judgment be entered in its favor against the Defendants, jointly and severally, for compensatory damages, costs of suit, interest, and any such other relief as this Honorable Court deems just and proper.

<u>COUNT VII</u>
**ALTER EGO LIABILITY**
**PLAINTIFF v. ALL DEFENDANTS**

86.     The aforementioned paragraphs are incorporated as if set forth more fully herein.

87.     On information and belief, the unity of interest between Defendants is such that the corporations/entities do not have separate personalities.

88.     On information and belief, Defendants Kassimis and Benavides are the sole owners of Defendants JRC Renovations, LLC, JRC Renovations, Inc., JRC Restorations and BIG Contracting Corp a/k/a BIG Abatement.

89.     On information and belief, Defendant BIG controls and directs JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations.

90.     Although Plaintiff and Defendant BIG were the only parties to the Subcontract Agreement, Defendant BIG utilized JRC Renovations, LLC, JRC Renovations, Inc., JRC Restorations, Kassimis and Benavides as if they were actually BIG Contracting Corp. in performing its obligations and assuming its responsibilities under the Subcontract Agreement.

91.     Defendant BIG through Defendants Kassimis and Benavides acted to utilize Defendants JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations in order to shield Defendants BIG, Kassimis and Benavides from the liabilities of the Subcontract Agreement including the requirement of providing labor, equipment, tools and materials to perform the work.

92.     Defendants BIG, Kassimis and Benavides utilized JRC Restorations to contract with Superior Scaffold in order to obtain labor, equipment, tools and material with no intention of actually paying that debt.  Exhs. "K" & "L."

93.     Defendants BIG, Kassimis and Benavides utilized JRC Renovations, LLC to

misrepresent that Defendant BIG had actually paid the debt to Superior Scaffold in order to obtain payment under the Subcontract Agreement from Plaintiff.  Exhs. "O" & "P."

94.    On information and belief, Defendants BIG, JRC Renovations, Inc., JRC Renovations, LLC and JRC Restorations are without the ability to pay for their debts due to being intentionally grossly undercapitalized.

95.    Defendants BIG, Kassimis and Benavides are seeking to escape financial liability by hiding behind Defendants JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations.

96.    On information and belief, Defendants Kassimis and Benavides exploited their ownership positions to siphon the funds from Defendants BIG, JRC Renovations, Inc., JRC Renovations, LLC and JRC Restorations for their own personal individual gain.

**WHEREFORE**, Plaintiff demands the entry of judgment in its favor and against Defendants and respectfully requests that this Honorable Court enter an Order finding that Defendants BIG, JRC Renovations LLC, JRC Renovations, Inc. and JRC Restorations are alter egos and, therefore, each jointly and severally liable for the damages alleged by Plaintiff.

<u>**COUNT VIII**</u>
**PIERCE THE CORPORATE VEIL**
**PLAINTIFF v. ALL DEFENDANTS**

97.    The aforementioned paragraphs are incorporated as if set forth more fully herein.

98.    Upon information and belief, Defendants BIG, JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations are merely a façade for the operation of its owners, Defendants Dimitrios Kassimis and Erik Benavides.

99.    Upon information and belief, the sole and exclusive owners/shareholders of Defendants BIG, JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations are

Defendants Kassimis and Benavides.

100.    Upon information and belief, Defendants BIG, JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations are grossly undercapitalized for their business purposes.

101.    Upon information and belief, Defendants BIG, JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations have failed to observe corporate formalities.

102.    Upon information and belief, Defendants BIG, JRC Renovations, LLC, JRC Renovations, Inc. and JRC Restorations have failed to maintain adequate corporate records.

103.    It would be manifestly unjust and fundamentally unfair to allow Defendants Kassimis and Benavides to shield themselves from personal liability for the acts alleged herein by hiding behind the corporate form of Defendant BIG and its alter egos JRC Renovations LLC, JRC Renovations, Inc. and JRC Restorations.

**WHEREFORE**, Plaintiff demands the entry of judgment in its favor and against Defendants and respectfully requests that this Honorable Court enter an Order piercing the corporate veil and holding Defendants Dimitrios Kassimis and Erik Benavides personally liable for their own acts and the acts alleged to have been committed by Defendant BIG and its alter egos JRC Renovations LLC, JRC Renovations, Inc. and JRC Restorations.

*Hoagland, Longo, Moran, Dunst & Doukas, LLP*

Dated:  March 22, 2018          By: _Sean Ryan_

_____

Sean C. Ryan, Esquire